**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| CINNAMON HILGENBERG AND MARK HILGENBERG,<br>Plaintiffs,<br>v.<br>ELGGREN & PETERSON,<br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13-cv-1086<br><br>Judge Robert J. Shelby |
|---|---|

This is a debt-collection case. Defendant Elggren & Peterson called Plaintiffs Cinnamon and Mark Hilgenberg at least twenty times in a ten-month span attempting to collect a debt. The Hilgenbergs allege that Elggren & Peterson's phone calls violated three separate statutes and invaded their privacy. Both parties move for summary judgment.

**BACKGROUND**

Elggren & Peterson first contacted the Hilgenbergs by letter dated December 12, 2012, referencing a debt, the amount due, and other information regarding the debt-collection process. The firm also called the Hilgenbergs twice on or about December 27, 2012 and January 4, 2013. In response, the Hilgenbergs mailed Elggren & Peterson a letter stating, "I do not recognize this debt and therefore I dispute this account. All phone calls are inconvenient because of my physical condition, so all communications need to be by mail." Elggren & Peterson received the letter on January 7, 2013.

Between January 8, 2013 and June 14, 2013, the law firm called the Hilgenbergs seven times. The Hilgenbergs sent another letter, which Elggren & Peterson received on June 7, 2013. The June 2013 letter contained the same language as the January 2013 letter. Between July 12,

2013 and October 7, 2013, Elggren & Peterson called the Hilgenbergs eleven more times. In all, Elggren & Peterson called the Hilgenbergs twenty times, and the Hilgenbergs submitted fourteen transcribed voicemails into evidence. The debt collectors did not disclose that they were from a debt-collection agency in any of the calls. They disclosed that they were calling from Elggren & Peterson in five of the fourteen transcribed voicemails. There is no evidence that the Hilgenbergs spoke directly with any of the debt collectors.

The Hilgenbergs eventually sued Elggren & Peterson, alleging violation of three statutes: the Fair Debt Collection Practices Act (FDCPA), the Telephone Consumer Protection Act (TCPA), and the Utah Consumer Sales Practices Act (UCSPA). The Hilgenbergs also brought a claim for invasion of privacy. The parties have filed cross motions for summary judgment. For the reasons stated below, the court grants summary judgment in favor of the Hilgenbergs on their FDCPA claims. Additionally, the court grants summary judgment in favor of the law firm on the Hilgenbergs' TCPA claim and concludes that factual issues remain for trial related to the state law claims.

## ANALYSIS

### I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[2] Importantly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3]

[1] Fed. R. Civ. P. 56(a).
[2] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Fair Debt Collections Practices Act Claim

The Hilgenbergs move for summary judgment on their FDCPA claim. They argue that Elggren & Peterson violated multiple provisions of the FDCPA by failing to disclose that calls were from a debt collector, failing to disclose its identity, continuing to make calls after receiving the Hilgenbergs' letters, and making calls that were inconvenient for the Hilgenbergs.

The court is instructed to consider the FDCPA as a remedial statute that "should be construed liberally in favor of the consumer."[4] To give the statute a broad construction, the court applies the least-sophisticated-consumer standard.[5] The inquiry under the standard is "how the least sophisticated consumer—one not having the astuteness of a [lawyer] or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives."[6] The standard seeks to further the FDCPA's purpose of protecting all consumers, including the gullible and naïve, as well as the shrewd.[7] Importantly, the least-sophisticated-consumer standard is an objective one, and the court does not consider the Hilgenbergs' sophistication or understanding of the debt-collection process.

### A. Communications Under the FDCPA

The Hilgenbergs allege that Elggren & Peterson violated several FDCPA provisions, including Sections 1692c(a) and 1692e(11). Both of those Sections apply to exchanges between a debt collector and a debtor that constitute "communications" as defined by the FDCPA. Elggren & Peterson contends that its conduct did not violate Sections 1692c(a) and 1692e(11) because its phone calls were not communications. However, the law firm admitted in discovery

---

[4] *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

[5] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The Tenth Circuit has not adopted the standard in a published opinion, but has applied it in at least two unpublished opinions. *See Fouts v. Express Recovery Servs., Inc.*, No. 14-4046, 2015 WL 427425, at *3 (10th Cir. Feb. 3, 2015); *Ferree v. Marianos*, 129 F.3d 130 (10th Cir. 1997).

[6] *Ferree*, 129 F.3d at *1 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)).

[7] *Clomon*, 988 F.3d at 1318.

that the phone calls were communications under the FDCPA. The court concludes that it is bound by that admission.

During discovery, the Hilgenbergs sent Elggren & Peterson a request for admission that called for the law firm to admit or deny that "[t]he telephone calls you made to collect the alleged debt are 'communications' as that term is defined by 15 U.S.C. 1692a(2) . . . ." Elggren & Peterson objected to the request, arguing it called for a legal conclusion, but then replied, "[D]efendant admits its telephone calls made to Plaintiff are communications under the FDCPA."

Rule 36 requests for admissions aim to "secure the just, speedy and inexpensive determination of actions by avoiding the time, trouble and expense required to prove undisputed facts which should be admitted."[8] The rule allows requesting parties to seek admissions relating to "facts, the application of law to fact, or opinions about either."[9] Responding parties may object when admissions call for the truth of a legal conclusion.[10] For example, it would be inappropriate to request that a party interpret a statute or "ratify legal conclusions that the requesting party has simply attached to operative facts."[11]

Although the definition of communications under the FDCPA is open to interpretation, the Hilgenbergs' request for admission did not call for a purely legal conclusion because the request did not ask the law firm to admit that a certain construction of the statute is correct. Rather, the request asked Elggren & Peterson to apply the definition of the statute to the specific facts—the phone calls at issue—and to indicate by its answer whether the "communications" element of the applicable FDCPA provisions was in dispute in this case. The request was proper

[8] *LaForte v. Horner*, 833 F.2d 977, 982 (Fed. Cir. 1987); *see also* Fed. R. Civ. P. 36 (1970 Amendment Advisory Committee Notes) ("Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.").

[9] Fed. R. Civ. P. 36(a)(1)(A).

[10] *See, e.g.*, *Prograde Ammo Grp. LLC v. Perry*, No. 14-CV-00884-PAB-MEH, 2015 WL 1539616, at *2 (D. Colo. Mar. 30, 2015).

[11] *See, e.g.*, *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006); *LaForte*, 833 F.2d at 982.

under Rule 36. If Elggren & Peterson did not agree that the phone calls were communications, it could have simply denied it. Instead, the law firm objected then admitted.

The court construes Elggren & Peterson's response as an admission. Rule 36 is designed to narrow issues early in litigation.[12] Responses to requests for admissions should be "forthright, specific, and unconditional."[13] Nothing in Rule 36 permits a responding party to simultaneously object and substantively answer in a way that somehow reserves the effect of an admission. And allowing a party to so respond to a request for admission would only create confusion. Such a practice would broaden, rather than narrow, the issues and would leave the requesting party without a clear answer. It would also open the door to abuse, surprise, and unfairness: a requesting party could reasonably construe a response like the one at issue here as an admission, only to have the responding party later purport to deny the admission after the close of discovery on the basis of an unresolved objection. Here, the law firm's admission removed from the case the question whether the calls to the Hilgenbergs constituted communications under the FDCPA. The court concludes that Rule 36 binds Elggren & Peterson to its admission that its phone calls to the Hilgenbergs constituted communications under the FDCPA.

**B. Section 1692c(a): Inconvenient Phone Calls**

The FDCPA prohibits debt collectors from calling debtors at any time known to be inconvenient. Section 1692c(a) states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> > (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . . .[14]

[12] Fed. R. Civ. P. 36 (1970 Amendment Advisory Committee Notes).

[13] *Cf.* 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2260 (3d ed. 2010).

[14] 15 U.S.C. § 1692c(a).

The Hilgenbergs sent two letters to Elggren & Peterson that stated, "All phone calls are inconvenient because of my physical condition, so all communications need to be by mail." Elggren & Peterson argues that the letters did not put them on notice of any times or places that were inconvenient for the Hilgenbergs to receive phone calls. In particular, Elggren & Peterson contends, "The Hilgenbergs have not alleged that any of the voicemail messages were left at inconvenient times or places. Rather, they allege only that phone calls themselves were inconvenient."

The court is instructed to broadly construe the FDCPA as a statute designed to protect the least sophisticated consumer from abusive debt-collection practices. Elggren & Peterson's argument asks the court to place an unreasonable burden on debtors to precisely alert debt collectors of inconvenient times and places. Such a burden contradicts the statute's purpose. The Hilgenbergs stated in their letter that "[a]ll phone calls are inconvenient." The plain meaning of the phrase is that any phone call, no matter the hour, is inconvenient. No reasonable jury could conclude otherwise. The Hilgenbergs were not required to superfluously state that any phone call at any time or place would be inconvenient. If the statute allows the debtor to order a debt collector to cease all communications,[15] it certainly allows a debtor to declare that all phone calls are inconvenient due to a physical condition.

The court concludes that each phone call Elggren & Peterson placed after receiving the Hilgenbergs' cease-and-desist letters violated Section 1692c(a).

---

[15] *See id.* at § 1692c(c).

### C. Section 1692e(11): Disclosure of Identity

The Hilgenbergs argue that Elggren & Peterson violated Section 1692e(11) by failing to disclose its identity as a debt collector in at least twenty calls. Section 1692e(11) prohibits the following:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.[16]

The Hilgenbergs do not contend that Elggren & Peterson failed to make the requisite disclosures in its initial communication, which was a letter dated December 12, 2012. Instead, they contend that Elggren & Peterson violated Section 1692e(11) by failing "to disclose in subsequent communications that the communication is from a debt collector."[17] Although the debt collectors occasionally disclosed that they were calling from Elggren & Peterson, they did not disclose that they were calling from a debt-collection agency. In *Foti v. NCO Financial Systems, Inc.*,[18] the Southern District of New York held that disclosing the agency's name alone without stating that that the call is from a debt collector does not satisfy Section 1692e(11).[19] Put differently, the least sophisticated consumer would not understand a call to be from a debt-collection agency if the caller did not disclose that information.[20]

Elggren & Peterson does not dispute that it failed to make proper disclosures under Section 1692e(11). Rather, the law firm contends that the phone calls were not communications under the FDCPA. That argument fails in view of the law firm's admission discussed above.

---

[16] *Id.* at § 1692e(11).
[17] *Id.*
[18] 424 F. Supp. 2d 643 (S.D.N.Y. 2006).
[19] *Id.* at 669.
[20] *Id.*

Summary judgment is granted in favor of the Hilgenbergs on their claim that Elggren & Peterson failed to meet the disclosure requirements contained in Section 1692e(11) during twenty phone calls.

**D. Section 1692d(6): Meaningful Disclosure**

The Hilgenbergs also contend that Elggren & Peterson violated Section 1692d(6) of the FDCPA, which states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

The questions before the court are (1) what constitutes a "meaningful disclosure of the caller's identity" and (2) must a debt collector make a meaningful disclosure in each phone call.

The Tenth Circuit has not construed "meaningful disclosure," but courts interpreting Section 1692d(6) have "uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business."[21] The court agrees with the ample case law on this point. Merely stating the debt collector's personal name is not meaningful to the debtor.[22] Under the least-sophisticated-consumer standard, it fails to notify the consumer about the source and purpose of the call. It says nothing of the debt or the repayment process.[23] For the disclosure of the caller's identity to be

---

[21] *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 949 (D. Minn. 2008); *see also, e.g.*, *Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105 (D. Colo. 2012); *Valencia v. Affiliated Grp., Inc.*, No. 07-61381-CIV, 2008 WL 4372895, at *3 (S.D. Fla. Sept. 24, 2008); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005); *Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 597 (N.D. Ga. 1982).

[22] *See Torres*, 865 F. Supp. 2d at 1105.

[23] *See id.*

meaningful, it must at least include the caller's name and the company's identity, and describe the debt collector's business.

Of the fourteen transcribed voicemail messages submitted into evidence, only five disclose the law firm's name and none disclose the nature of the debt collector's business. Some voicemails simply state the caller's personal name and contact information and ask the Hilgenbergs for a call back. What's more, three separate debt collectors called the Hilgenbergs. The Hilgenbergs were not required under the statutory framework to remember and cross reference these calls over a ten-month period.[24] Some consumers receiving Elggren & Peterson's calls could recollect the prior calls and letters and understand that the calls regarded a debt. But the least-sophisticated-consumer standard requires the court to consider what a consumer with below-average sophistication would perceive. The least sophisticated consumer—and even an average consumer—could easily forget or mix up the identity of a debt collector, especially when the messages do not clearly reference the debt.[25] Elggren & Peterson failed to make meaningful disclosures in the fourteen transcribed voicemail messages. Thus, the Hilgenbergs are entitled to summary judgment on their claim under Section 1692d(6).

**E. Section 1692c(c): Cease-and-Desist Letters**

The FDCPA prohibits debt collectors from communicating with debtors after the debt collectors receive a cease-and-desist communication. Section 1692c(c) states:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

---

[24] *See Rhodes v. Olson Associates, P.C.*, No. 14-CV-00919-CMA-MJW, 2015 WL 1136176, at *9 (D. Colo. Mar. 13, 2015).

[25] *See Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006) ("The least sophisticated consumer, who may receive voluminous messages and calls, could easily be confused about the identify of 'NCO Financial Systems,' particularly given the vague reference in the message to 'a personal business matter that requires your immediate attention.'"); *see also Rhodes*, 2015 WL 1136176, at *9.

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.[26]

The Hilgenbergs sent Elggren & Peterson letters on two separate occasions that stated, "I do not recognize this debt and therefore I dispute this account. All phone calls are inconvenient because of my physical condition, so all communications need to be by mail." The law firm continued to call after receiving both letters. The statute requires the debt collector to cease communication if the debtor states that she refuses to pay the debt *or* that communication must cease.

There is a factual dispute about whether Elggren & Peterson reasonably interpreted the sentence "I do not recognize this debt and therefore I dispute this account" as meaning something other than the Hilgenbergs refused to pay the debt. Disputing an account is not necessarily the same thing as refusing to pay the outstanding debt associated with the account. In other words, a reasonable jury could return a verdict for the law firm on the issue.[27]

Regardless, the letter plainly states that the law firm should not make any more phone calls—"*all* communications need to be by mail." Elggren & Peterson contends that the letter did not constitute a request to cease phone calls. Specifically, the law firm cites the statutory language and argues that "the letters do not say that the Hilgenbergs . . . 'wish [Elggren] to cease further communication with the [Hilgenbergs].'" But the fact that the Hilgenbergs did not quote

---

[26] 15 U.S.C. § 1692c(c).

[27] *Cf. Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011).

the statute verbatim is not dispositive.[28] The statute does not impose that burden on the least sophisticated consumer. The letter clearly demanded Elggren & Peterson to stop calling. Although Elggren & Peterson claims it interpreted the letter as something other than a request to cease phone calls, no reasonable jury could find in the law firm's favor. Therefore, there is no genuine issue of material fact concerning whether the Hilgenbergs' letters constituted cease-and-desist letters.

Each phone call that Elggren & Peterson made after receiving the Hilgenbergs' letters violated Section 1692c(c).

### F. Conclusion

The court grants summary judgment in favor of the Hilgenbergs on the question whether Elggren & Peterson violated the FDCPA provisions at issue. The Hilgenbergs have only moved for summary judgment on the question of liability, but not on the question of damages. The court thus retains jurisdiction over the FDCPA claim and proceeds to trial only on the question of damages.

## III. Telephone Consumer Protection Act Claim

The Hilgenbergs allege that Elggren & Peterson violated the TCPA, which governs calls made by an "automatic telephone dialing system."[29] The statute defines "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[30]

The parties part ways on the definition of "automatic telephone dialing system" and the scope of the statute. Elggren & Peterson argues that the statute does not apply to manually placed phone calls. More specifically, the law firm argues that the statute does not apply to its

---

[28] *See Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361, 1367 (M.D. Fla. 2010).
[29] 47 U.S.C. § 227.
[30] *Id.* at § 227(a)(1).

phone calls to the Hilgenbergs because the phone calls were not made using autodialer technology. Indeed, it is undisputed that each phone call to the Hilgenbergs was manually placed. Therefore, Elggren & Peterson would be entitled to summary judgment if the court adopted the law firm's narrow interpretation of the statute.

The Hilgenbergs, for their part, maintain that the statute applies to capacity and not use. They assert that the statute reaches phone calls made by phone systems that have the capacity to make automatic phone calls, even if the phone calls at issue were manually placed. Even assuming the court adopted the Hilgenbergs' interpretation, there is no evidence that Elggren & Peterson's phone system has the capacity to make automatic calls.

The Hilgenbergs concede that they cannot prove that Elggren & Peterson's phone system has autodialer capacity. They argue that their failure of proof stems from Elggren & Peterson's refusal to produce evidence regarding its phone system. In particular, the Hilgenbergs point to Elggren & Peterson's refusal to answer interrogatories about the phone system and to identify witnesses that could provide information about the phone system. For example, the Hilgenbergs asked the law firm in an interrogatory to "[i]dentify and describe, in detail, all electronic, mechanical, manual, software, and other systems, methods, and procedures you use, maintain, or operate to make telephone calls in connection with the collection of debt." Elggren & Peterson responded, "Representatives manually dial each phone call using a basic phone system." When asked about the law firm's phone system, Mr. Elggren stated that he did not remember the make or model because the law firm purchased the system "some time ago."

Discovery is intended "to facilitate the free flow of information between parties."[31] Federal Rule of Civil Procedure 26(b)(1) states, "Parties may obtain discovery regarding any

---

[31] *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.*, No. C 11–4017–MWB, 2014 WL 3704277 at *1 (N.D. Iowa July 28, 2014).

nonprivileged matter that is relevant to any party's claim or defense."[32] Federal courts have broadly interpreted this rule.[33] The court certainly laments Elggren & Peterson's purported failure to produce relevant information to the Hilgenbergs, even when specifically requested in discovery. The Hilgenbergs were surely entitled to discover information about the law firm's phone system, even if the law firm believed that the TCPA was inapplicable. It appears that Elggren & Peterson refused to provide requested relevant information regarding its phone system and then moved for summary judgment based on the Hilgenbergs' failure to put forth evidence regarding the phone system. This sharp discovery tactic is troubling.

The time for discovery disputes has passed, however. At this stage, the court is focused on the standards and burdens tied to summary judgment. Elggren & Peterson, as the movant, has the burden of showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[35] Elggren & Peterson has taken the latter approach by arguing that the Hilgenbergs have failed to provide evidence that the law firm's phone system has autodialer capacity. In response, the Hilgenbergs concede that they cannot prove the phone system has autodialer capacity, but that the court should excuse their failure of proof because Elggren & Peterson skirted its duty to produce relevant discovery. In essence, the Hilgenbergs seek to avoid summary judgment based on undiscovered facts. If the court denied summary judgment here,

---

[32] Fed. R. Civ. P. 26(b)(1).

[33] *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "relevant" should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

[34] Fed. R. Civ. P. 56(a).

[35] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

the Hilgenbergs would proceed to a trial on the TCPA claims without any evidence that the TCPA governs Elggren & Peterson's conduct. In sum, the Hilgenbergs have failed to show that they can carry their ultimate burden of persuasion at trial.

All this is not to say that the Hilgenbergs were left without a remedy for Elggren & Peterson's evasive discovery practices. A party may file a motion to compel discovery when an opponent objects or refuses to produce discovery. Further, a party may file Rule 56(d) motion if it "cannot present facts essential to justify its opposition" and the court may allow further discovery if appropriate.[36] Indeed, it appears such a motion may have been well taken here. But the Hilgenbergs have sought no such relief from the court.[37] Instead, they have raised their objections in their opposition to Elggren & Peterson's Motion for Summary Judgment. The court confines itself to the Rule 56 standard and grants summary judgment in favor of Elggren & Peterson. The TCPA claim is dismissed.

**IV. Utah Consumer Sales Practices Act**

The Hilgenbergs contend that Elggren & Peterson violated Sections 13-11-14 and 13-11-15 of the UCSPA.[38] Elggren & Peterson move for summary judgment on the alleged Section 13-11-14 violation. Section 13-11-14 prohibits knowing or intentional deceptive practices.[39] Elggren & Peterson asserts that the Hilgenbergs have failed to provide any evidence of deceptive acts, let alone knowing or intentional conduct. The law firm does not cite to any case law showing that the UCSPA is inapplicable in this instance.

---

[36] Fed. R. Civ. P. 56(d).

[37] The discovery deadline in this case was February 23, 2015. (Dkt. 15.) Elggren & Peterson filed its Motion for Summary Judgment on January 13, 2015. (Dkt. 26.) The Hilgenbergs did not file a motion to compel or Rule 56(d) motion even though they were on notice of Elggren & Peterson's argument before the discovery deadline had passed.

[38] U.C.A. § 13-11-14 to -15.

[39] *Id.* at § 13-11-14.

The Hilgenbergs, for their part, submit evidence that Elggren & Peterson debt collectors failed to identify the law firm, stated that they had "important information" about the Hilgenbergs' home, and spoke to the Hilgenbergs as if they were friends. Regarding intentional conduct, the Hilgenbergs put forth evidence that Elggren & Peterson debt collectors were under pressure to collect payments quickly and continually called the Hilgenbergs without disclosing the law firm's name or the nature of the call.

At this stage, the court does not weigh the record evidence. Rather, the court examines the submitted evidence to determine whether a genuine dispute of material facts exists. Elggren & Peterson argues that the Hilgenbergs have presented no facts to support their claims; the Hilgenbergs, on the other hand, point to record evidence to rebut the law firm's assertion. The court concludes that the Hilgenbergs have submitted enough evidence to create a genuine dispute for trial.

**V. Invasion of Privacy**

Lastly, Elggren & Peterson move for summary judgment on the Hilgenbergs' claim for invasion of privacy. To prevail on the claim, the Hilgenbergs must prove that "(1) that there was an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party, and (2) that the intrusion would be highly offensive to the reasonable person."[40] Importantly, Utah courts have observed that the question whether an intrusion is highly offensive to the reasonable person is a "determination of fact for which a jury is uniquely qualified."[41]

The Hilgenbergs submit evidence that Elggren & Peterson repeatedly called them even after the cease-and-desist letters. The Hilgenbergs also point out the vague, yet urgent, nature of

[40] *Stien v. Marriott Ownership Resorts*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (citations omitted) (internal quotation marks omitted); *Turner v. Gen. Adjustment Bureau, Inc.*, 832 P.2d 62, 67 (Utah Ct. App. 1992).

[41] *Turner*, 832 P.2d at 67.

the voicemail messages. Further, the Hilgenbergs assert that the law firm persistently called even though it was on notice that all calls were inconvenient due to the Hilgenbergs' physical condition. Elggren & Peterson, the movant, asserts that the Hilgenbergs have failed to provide any evidence to support their claim. The firm does not point to any evidence to controvert the Hilgenbergs' evidence, however. Put simply, there are factual disputes, and the question of what constitutes a substantial intrusion that is highly offensive to a reasonable person is fact intensive and therefore best resolved at trial.

**CONCLUSION**

For the reasons stated, the court GRANTS the Hilgenbergs' Motion for Summary Judgment (Dkt. 24) and GRANTS IN PART AND DENIES IN PART Elggren & Peterson's Motion for Summary Judgment (Dkt. 26). The court grants summary judgment in favor of the Hilgenbergs on their FDCPA claim, and dismisses the TCPA claim. The court retains jurisdiction over the FDCPA claim to determine damages. The court also retains supplemental jurisdiction over the state claims.

IT IS SO ORDERED, this 6th day of July, 2015.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge